# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| BEIJING FITO MEDICAL COMPANY, LTD., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 2:15-cv-02258-JPM-tmp ) |
| WRIGHT MEDICAL TECHNOLOGY, INC., | ) ) ) ) |
| Defendant, | ) ) ) |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (ECF NO. 45) AND DENYING AS MOOT MOTION TO DISMISS AND STRIKE (ECF NO. 31)**

Before the Court is Beijing Fito Medical Company, Ltd.'s ("Beijing Fito" or "Plaintiff") Motion to Dismiss Wright's Counterclaims I Through III and to Strike Affirmative Defenses Nos. 2, 3, 6, 9, and 10 ("First Motion to Dismiss"), filed September 28, 2015. (ECF No. 31.) After the filing of this motion, the Court granted Defendant Wright Medical Technology, Inc. ("Wright" or "Defendant") leave to amend its Answer and Counterclaim. (ECF No. 42.) Because Wright's original Answer to Amended Complaint and Counterclaim was superseded by the filing of its First Amended Answer to Amended Complaint and First Amended Counterclaim, there is no longer a live dispute as to the merits of the claims and defenses asserted therein. See Ky. Press Ass'n, Inc. v. Kentucky, 355 F. Supp. 2d 853, 857 (E.D.

1

Ky. 2005) ("Plaintiff's amended complaint super[s]edes the original complaint, thus making the motion to dismiss the original complaint moot." (citing Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000))). Accordingly, Beijing Fito's First Motion to Dismiss is DENIED AS MOOT.

Also before the Court is Plaintiff Beijing Fito's Motion to Dismiss Counts II and III in Their Entirety and Count I in Part of Defendant Wright's First Amended Counterclaim ("Second Motion to Dismiss"), filed November 6, 2015. (ECF No. 45.) For the reasons stated below, this Motion is GRANTED IN PART and DENIED IN PART.

I. BACKGROUND

A. Factual Background

Beijing Fito's claims and Wright's counterclaims largely center on the breakdown of their contractual relationship and the events that followed the termination of the Distribution Contract.

Beijing Fito and Wright entered into a distribution contract on or about April 27, 2010, in which Wright agreed to sell certain orthopedic medical devices to Beijing Fito and allowed Beijing Fito the exclusive right to distribute those products in China. (Am. Compl. ¶ 10, ECF No. 26; see also Am. Answer ¶ 10, ECF No. 43.) This distribution agreement terminated on December 31, 2012. (Am. Compl. ¶ 10; see also Am.

Answer ¶ 10.) On October 9, 2012, the parties entered into a second distribution agreement ("the Distribution Contract"), which granted Beijing Fito the exclusive right to distribute certain products in China through December 31, 2015. (Am. Compl. ¶ 13; Am. Counterclaim ¶ 11, ECF No. 43; see also Am. Answer ¶ 13.)

On August 29, 2013, Wright notified Beijing Fito of its intention to assign its interest in the hip and knee business to MicroPort Scientific Corporation. (Am. Compl. ¶ 20; Am. Counterclaim ¶ 20; see also Am. Answer ¶ 20.) Wright also enclosed a new distribution contract to cover the non-hip/knee products following Wright's assignment to Microport, which Beijing Fito declined to sign. (Am. Compl. ¶¶ 20-21; Am. Countercl. ¶¶ 21-22; see also Am. Answer ¶¶ 20-21.)

On May 16, 2014, Wright notified Beijing Fito that it had assigned its interest in the hip and knee business, terminated all contractual agreements between Beijing Fito and Wright, and revoked its offer to enter the proposed distribution contract. (Am. Compl. ¶ 25; Am. Countercl. ¶ 23; see also Am. Answer ¶ 25.) Wright alleges that, in June 2014, Beijing Fito marketed reproductions of Wright's foot and ankle products at a medical forum in Beijing and had published a catalog and brochure marketing Wright's products and using Wright's commercial names. (Am. Countercl. ¶¶ 24-28.) According to Wright, Beijing Fito

also represented to one of Wright's distributors that Beijing Fito had in its possession confidential technical drawings of Wright's product designs.  (Am. Countercl. ¶ 31.)

In August 2014, Wright sent a letter to certain Chinese customers informing them that Beijing Fito no longer had rights to distribute Wright's products, that new distributors would be appointed, and that Wright had established a subsidiary in China to provide sales and marketing services to customers in China. (Am. Compl. ¶ 33; Am. Countercl. ¶ 30; see also Am. Answer ¶ 33.)

B.  **Procedural Background**

Plaintiff filed a Complaint against Wright on April 20, 2015, alleging breach of contract and tortious interference with business relationships.  (ECF No. 1.)  On May 20, 2015, Defendant filed an Answer.  (ECF No. 10.)  With leave of Court, Defendant filed its First Amended Answer and Counterclaim on September 3, 2015, alleging breach of contract, misappropriation of trade secrets, and tortious interference with business relationships.  (ECF No. 25.)  Also with leave of Court, Plaintiff filed an Amended Complaint on September 4, 2015.  (ECF No. 26.)  Defendant filed an Answer to the Amended Complaint and Counterclaim on September 18, 2015.  (ECF No. 28.)

On September 28, 2015, Plaintiff filed a Motion to Dismiss Defendant's Counterclaims I through III and a Motion to Strike

Affirmative Defense Nos. 2, 3, 6, 9, and 10.  (ECF No. 31.)  On October 26, 2015, Defendant filed a Response in Opposition to Plaintiff's Motion to Dismiss.  (ECF No. 44.)  Plaintiff filed a reply brief on November 12, 2015.  (ECF No. 47.)

With leave of Court, Defendant filed a First Amended Answer to Amended Complaint and First Amended Counterclaim on October 20, 2015.  (ECF No. 43.)  In its Amended Counterclaim, Defendant expands upon the factual bases for its counterclaims and makes additional allegations specific to Counterclaims II and III.  (See id. at 13-24.)

On November 6, 2015, Plaintiff filed a Motion to Dismiss Counterclaims II and III, in their entirety, and Counterclaim I, in part, of Defendant's First Amended Counterclaim.  (ECF No. 45.)  Although Plaintiff's earlier motion to dismiss also sought to strike several of Defendant's affirmative defenses, Plaintiff did not assert the motion to strike in conjunction with the instant motion to dismiss.  (See ECF Nos. 31, 45.)  Defendant responded in opposition on December 4, 2015.  (ECF No. 54.)  Plaintiff filed a reply on December 18, 2015.  (ECF No. 55.)  The Court held a hearing on Plaintiff's Motion to Dismiss on January 5, 2016.  (Min. Entry, ECF No. 56.)

## II. Legal Standard

Under Rule 12(b)(6), a court can dismiss a complaint for "failure to state a claim upon which relief can be granted."

5

Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

> In assessing a complaint for failure to state a claim, [a court] must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

Ouwinga v. Benistar 419 Plan Servs., Inc., 694 F.3d 783, 790 (6th Cir. 2012) (second alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "This standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Williams v. Duke Energy Int'l, Inc., 681 F.3d 788, 799 (6th Cir. 2012) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted).

The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (alteration in original) (citation omitted) (internal quotation marks omitted); see also Mik v. Fed. Home Loan Mortg. Corp., 743 F.3d 149, 157 (6th Cir. 2014) ("[A] complaint must contain 'more than

6

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." El-Moussa v. Holder, 569 F.3d 250, 257 (6th Cir. 2009) (alteration in original) (internal quotation marks omitted).

In ruling on a motion to dismiss, the Court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion . . . so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008).

**III. Analysis**

    **A.   Tortious Interference with Business Relationships**

Plaintiff argues that Wright's tortious interference counterclaim must be dismissed because (1) the claim is preempted by the Tennessee Uniform Trade Secrets Act ("TUTSA") because it relies on allegations that Beijing Fito reproduced products using misappropriated trade secrets, and (2) alternatively, Wright fails to plead existing or prospective

7

relationships with customers. (ECF No. 45-1 at 4-8; ECF No. 55 at 3-7.) Defendant maintains that its tortious interference claim is unrelated to its misappropriation claim and is based on other "improper motive or improper means." (ECF No. 54 at 4-8.) Defendant also points out that it pleads that paragraph 4.4 of the Distribution Contract and a letter sent to customers on August 13, 2014 ("the Cooke Letter"), establish existing and prospective relationships with certain customers. (ECF No. 54 at 9-10; Am. Countercl. ¶¶ 14, 30, 55.)

Tennessee state law imposes liability for tortious interference with business relationships

> provided that the plaintiff can demonstrate the following: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's <u>improper motive or improper means</u>; and finally, (5) damages resulting from the tortious interference.

<u>Trau-Med of Am., Inc. v. Allstate Ins. Co.</u>, 71 S.W.3d 691, 701 (Tenn. 2002) (footnotes and citation omitted).

The Tennessee Supreme Court noted that "[t]he relations protected against intentional interference . . . include any prospective contractual relations . . . . Also included is interference with a continuing business or other customary relationship not amounting to a formal contract." <u>Id.</u> at 701

n.4 (adopting the discussion in Restatement (Second) of Torts § 766B cmt. c (Am. Law Inst. 1979)). To establish improper motive, "the plaintiff [must] demonstrate that the defendant's predominant purpose was to injure the plaintiff." Id. at 701 n.5.

The Tennessee Uniform Trade Secrets Act ("TUTSA"), see infra Part III.B, "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(a). "TUTSA also preempts other causes of action if proof of those causes of action, in whole or in part, would constitute misappropriation of a trade secret." Vincit Enters., Inc. v. Zimmerman, No. 1:06-CV-57, 2006 WL 1319515, at *7 (E.D. Tenn. May 12, 2006); see also Hauck Mfg. Co. v. Astec Indus., Inc., 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004).

As an initial matter, Defendant pleads that it had existing and/or prospective business relationships with customers based on paragraph 4.4 of the Distribution Contract and the Cooke Letter. (Am. Countercl. ¶ 55; see also ECF No. 43-1 at PageID 920; ECF No. 43-10.) Although Defendant's assertion that it had existing relationships with customers borders on conclusory, Defendant sufficiently pleads that it had prospective relationships with an identifiable group of customers. Thus, the Court finds that Defendant satisfies the pleading standard

9

for the first element of tortious interference with business relationships.

The Court also finds that Wright's tortious interference claim is not preempted by TUTSA. Wright's claim involves allegations that Plaintiff interfered with Defendant's business relationships by (1) maliciously contacting Wright's existing or prospective customers in retaliation for Wright's termination of the Distribution Contract (Am. Countercl. ¶¶ 57-58); (2) fraudulently and deceptively using Wright's commercial names in marketing Plaintiff's products (id. ¶ 59); (3) alternatively, illegally copying or reproducing Wright's products and attempting to sell these reproductions in breach of the Distribution Contract and in retaliation for Wright's termination of the Contract (id. ¶ 60); and (4) alternatively, deceptively marketing products to customers by misrepresenting that Beijing Fito was in possession of Wright's confidential technical drawings (id. ¶ 61).

These allegations are unrelated to Defendant's trade secret claim and do not rely on a finding of misappropriation.[1] Even to

---

[1] Although Defendant does not appear to rely on trade secret misappropriation to establish its tortious interference claim, to the extent that Defendant's claim relies on Beijing Fito's alleged misappropriation of trade secrets to establish an "improper motive or improper means," Defendant's claim is preempted by TUTSA. Additionally, Defendant does not specify which provisions of the Distribution Contract Plaintiff allegedly breached to tortiously interfere with Defendant's business relationships. (See Am. Countercl. ¶ 60.) To the extent that Defendant seeks to allege tortious interference based on a breach of the confidentiality provision in paragraph 19 of the Distribution Contract, Defendant's claim is preempted by

the extent that these claims relate to Plaintiff's reproduction of Wright's product, Wright's tortious interference claim contends that the reproduction was improper due to breach of contract, not misappropriation of trade secrets. (See id. ¶ 60.) Moreover, Defendant's claim of tortious interference based on Plaintiff's alleged misrepresentation that Plaintiff possessed Wright's confidential drawings is necessarily premised on a lack of trade secret misappropriation. (See id. ¶ 61.) Proof of Defendant's tortious interference claim, therefore, would not establish, "in whole or in part," trade secret misappropriation. See Vincit Enters., 2006 WL 1319515, at *7.

The Court finds that Defendant's claim does not depend on an allegation of trade secret misappropriation, and accordingly, Defendant's tortious interference claim is not preempted by TUTSA. Plaintiff's Motion to Dismiss is DENIED as to this counterclaim.

**B. Trade Secret Misappropriation**

Plaintiff argues that Wright's trade secret counterclaim must be dismissed because Wright fails to plead that Beijing Fito misappropriated or had access to Wright's drawings. (ECF No. 45-1 at 8-9.) Specifically, Plaintiff argues that Wright

---

TUTSA. See Hauck Mfg., 375 F. Supp. 2d at 659 ("Plaintiff's tortious interference claim, to the extent that it relies upon [Defendants'] breach of their confidentiality agreements, is synonymous with 'misappropriation' as defined in the UTSA and would be preempted under any interpretation of UTSA preemption." (citation omitted)).

does not allege that it ever provided Beijing Fito a copy of any technical drawings or that Beijing Fito could have accessed the drawings through some other means. (ECF No. 55 at 7.) Defendant argues that it pleads that a Beijing Fito employee informed a distributor that Beijing Fito was in possession of confidential drawings. (ECF No. 54 at 11 (citing Am. Countercl. ¶ 31).) Defendant further argues that it sufficiently pleads that Beijing Fito misappropriated the drawings because Defendant alleges facts showing that Beijing Fito acquired the drawings under a duty to maintain secrecy and then disclosed and used the trade secrets to reproduce Defendant's products. (Id. at 12.)

The Court finds that Defendant sufficiently pleads the elements of trade secret misappropriation. Trade secrets are protected in Tennessee by the Tennessee Uniform Trade Secrets Act ("TUTSA"). See Tenn. Code Ann. § 47-25-1702 et seq. TUTSA prohibits misappropriation of trade secrets, providing for both injunctive relief and damages. Tenn. Code Ann. §§ 47-25-1703 to 1704. "Misappropriation" means, in relevant part, either "acquisition . . . by a person who knows or has reason to know that the trade secret was acquired by improper means," or disclosure without consent of a trade secret by a person who knows or has reason to know that it was "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Tenn. Code Ann. § 47-25-1702(2). "'Improper

means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or limit use, or espionage through electronic or other means . . . ." Tenn. Code Ann. § 47-25-1702(1).

In its Amended Counterclaim, Defendant pleads that "Beijing Fito took possession of the confidential technical drawings of Wright's product designs pursuant to the confidentiality provision (Paragraph 19) of the Distribution Contract." (Am. Countercl. ¶ 50; see also id. ¶¶ 31-32.) Defendant also pleads that Beijing Fito represented to one of Defendant's distributors that Beijing Fito was in possession of the drawings. (Id. ¶ 31.) Defendant further avers that Beijing Fito reproduced Wright's medical products and marketed them using Wright's commercial names only six weeks after the termination of the Distribution Contract. (Id. ¶¶ 24-29, 51.)

Taking these facts as true and drawing all reasonable inferences in favor of Defendant, Defendant sufficiently pleads that Plaintiff had access to specific trade secrets, confidential technical drawings of foot/ankle product designs, and improperly used these confidential drawings despite a duty to maintain secrecy or limit use. Thus, Defendant has stated a plausible claim that Beijing Fito misappropriated Wright's trade secrets to unlawfully reproduce Wright's products. See Melville Capital, LLC v. Tenn. Commerce Bank, No. 3:11-cv-00888, 2011 WL

13

6888476, at *7 (M.D. Tenn. Dec. 29, 2011) ("Because Plaintiff has identif[ied] the specific things it claims to constitute trade secrets and [] alleg[ed] that those items were misappropriated by [Defendant], Plaintiff has sufficiently stated a claim under TUTSA." (alterations in original) (citation and internal quotation marks omitted)).  Plaintiff's Motion to Dismiss Defendant's trade secret misappropriation counterclaim is therefore DENIED.

### C. Breach of Contract

Plaintiff argues that Wright's breach of contract counterclaim should be dismissed in part because the Distribution Contract between Beijing Fito and Wright had already been terminated at the time of the alleged breaches of paragraphs 4.2, 4.3, and 9.1.  (ECF No. 45-1 at 9-11.)  The provisions at issue prohibited Beijing Fito from reproducing or copying Wright's products (paragraph 4.2), distributing, selling, manufacturing, or promoting competing products (paragraph 4.3), and using Wright's commercial names without permission (paragraph 9.1).  (See ECF No. 43-1.)

Defendant submits three alternative arguments to refute Plaintiff's contentions.  First, Defendant argues that it sufficiently pleads facts demonstrating that Beijing Fito breached paragraphs 4.2 and 4.3 of the Distribution Contract prior to termination.  (ECF No. 54 at 13-15.)  Second, Defendant

14

argues that paragraphs 4.2 and 4.3 of the Contract survived the Contract's termination. (Id. at 15-16.) Third, Defendant argues that the May 16, 2014, letter ("the Bethell Letter") did not terminate the parties' Contract and that Plaintiff breached paragraphs 4.2, 4.3, and 9.1 of the Distribution Contract no later than June 26, 2014, prior to its termination. (Id. at 16.)

Paragraphs 9.3 and 19 of the Distribution Contract contain language providing for their survival beyond termination of the Contract. (See ECF No. 43-1.) Paragraphs 4.2, 4.3, and 9.1, however, contain no language to support their continued existence after the Contract's termination. (See id.) As Plaintiff correctly points out, "[t]he maxim expressio unius est exclusion alterius provides that where certain language is specified in some provisions of a contract, the court may infer the parties intended to exclude that language from all other provisions where it is not specified." (ECF No. 55 at 9 (citing D & E Constr. Co. v. Robert J. Denley Co., 38 S.W.3d 513, 519 (Tenn. 2001)).) Because paragraphs 9.3 and 19 explicitly provide for their continued existence following the Distribution Contract's termination, the Court infers that the omission of similar language from paragraphs 4.2, 4.3, and 9.1 was intentional. Accordingly, these paragraphs do not survive termination of the Contract.

Moreover, at this stage, the Court must accept as true all allegations made in the Counterclaim. Wright's alternative argument that the Bethell Letter did not, in fact, terminate the contractual relationship between Wright and Beijing Fito fails. Wright's argument is unsupported by the Amended Counterclaim and is contradicted by Wright's own allegation in paragraph 23 of the Amended Counterclaim that the Bethell Letter "advised Beijing Fito of the termination of the Distribution Contract." (See Am. Countercl. ¶ 23.) The Court, therefore, rejects Wright's argument that the Bethell Letter did not terminate the Contract and that the alleged breaches of paragraphs 4.2, 4.3, and 9.1 of the Distribution Contract therefore occurred prior to termination.

At this stage, however, the Court draws all reasonable inferences in favor of Defendant. Defendant pleads that Beijing Fito published a catalog, marketed products, and manufactured reproductions of Wright's products only six weeks after the termination of the contract. It is reasonable to infer that Beijing Fito began manufacturing activities before the Distribution Contract was terminated. Defendant, in fact, pleads this inference in paragraph 37 of its Amended Counterclaim. Accordingly, Wright's allegations are sufficient to state a plausible claim that Beijing Fito breached paragraphs 4.2 and 4.3 of the Distribution Contract before it was

terminated.  Wright does not argue for an inference that Beijing Fito breached paragraph 9.1 of the Distribution Contract prior to termination, and the Court does not find that such an inference is appropriate.  Plaintiff's Motion to Dismiss is therefore DENIED as to Defendant's breach of contract claim relating to paragraphs 4.2 and 4.3 of the Distribution Contract and GRANTED as to Defendant's breach of contract claim relating to paragraph 9.1.

**IV. CONCLUSION**

For the reasons stated above, Plaintiff's First Motion to Dismiss (ECF No. 31) is DENIED AS MOOT.  Plaintiff's Second Motion to Dismiss (ECF No. 45) is GRANTED IN PART as to Defendant's breach of contract claim relating to paragraph 9.1 of the Distribution Contract.  Plaintiff's Second Motion to Dismiss (ECF No. 45) is DENIED as to all other claims.

**IT IS SO ORDERED**, this 8th day of February, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE